UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CLARENCE JAY FAULKNER,<br><br>                      Plaintiff,<br>    v.<br><br>ISRAEL GONZALEZ, DAN DAVIS,<br>CHERYL SULLIVAN,<br>WASHINGTON DEPARTMENT OF<br>CORRECTIONS,<br><br>                      Defendant. | No. C15-5153 BHS-KLS<br><br>**REPORT AND RECOMMENDATION**<br>**Noted for:  July 24, 2015** |

       Defendants Israel Gonzalez, Dan Davis, Cheryl Sullivan, and the Washington Department of Corrections (DOC) move the Court pursuant to Fed. R. Civ. P. 12(b)(6) for dismissal of Plaintiff's claims.  Dkt. 14.  Mr. Faulkner is a Washington State inmate currently housed at the Airway Heights Corrections Center-MSU.  He alleges that while he was housed at the Stafford Creek Corrections Center (SCCC) his mail was wrongfully rejected and as a result, he was denied access to the courts.  He also contends that the policy upon which the mail rejection was based unconstitutionally denied his right to access and obtain legal materials.  Dkt. 6.

       The undersigned recommends that Defendants' motion be granted and that Mr. Faulkner's claims be dismissed with prejudice.

REPORT AND RECOMMENDATION - 1

**OBJECTION TO EXHIBITS**

In his reply, Mr. Faulkner submitted a declaration from another inmate to which is attached a copy of the Washington Court of Appeals' decision in *Francis v. Wash. State Dept. of Corrections*, Case No. 42712-5-II, 178 Wash. App. 42, 51-52, 313 P.3d 457 (2013), *review denied,* 180 Wash.2d. 1016, 327 P.3d 55 (2014).   Dkt. 18, at 13-38.  Defendants object to both exhibits because the declaration is a matter outside of Mr. Faulkner's complaint and the decision is not being offered under the doctrine of judicial notice.  See *Lee v. City of Los Angeles,* 250 F3d 668, 690 (9th Cir. 2001) (opinion can be offered "not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity.")  The Court agrees that the declaration is outside the scope of Mr. Faulkner's complaint for purposes of Defendants' Rule 12(b)(6) motion to dismiss and the declaration will not be considered.  Defendants cited to the *Francis* case in their motion to dismiss to allow the Court to review both Mr. Faulkner's published decision and the *Francis* decision.  Dkt. 14, at 7.  The Court of Appeals' decision has been considered only for purposes of its existence as it is the receipt of this decision that generated the mail rejection.

Defendants also object to Exhibit C (Dkt. 18, at 40) as duplicative of evidence submitted with Mr. Faulkner's complaint (Dkt. 6, at 8) but concede that the document is otherwise relevant and proper before the Court.  The Court has considered this exhibit.

**STATEMENT OF FACTS**

For the purposes of this motion, the allegations contained in Mr. Faulkner's complaint (Dkt. 6) are accepted as true.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Sometime in 2012, Mr. Faulkner filed suit against the DOC for violation of Washington's Public Records Act (PRA) (Chapter 42.56 RCW) for two documents related to rejected mail.

REPORT AND RECOMMENDATION - 2

After the initial production was incomplete, Mr. Faulkner sought penalties from the DOC for a violation of the PRA. The trial court found that a violation had occurred, but declined to award penalties because there was no showing of bad faith as required by RCW 42.56.565(1). In May of 2013, Mr. Faulkner appealed. See *Faulkner v. Wash. Dept. of Corrections,* 183 Wash.App. 93, 332 P.3d 1136 (Wash.App. Div. 3, Aug. 19, 2014).

In November 2013, Division Two of the Washington Court of Appeals issued its opinion in *Francis v. Wash. State Dept. of Corrections*, Case No. 42712-5-II, 178 Wash. App. 42, 51-52, 313 P.3d 457 (2013), *review denied,* 180 Wash.2d. 1016, 327 P.3d 55 (2014). Mr. Faulkner sought a copy of the opinion because it addressed the issue of bad faith similar to that brought in his lawsuit against the DOC. On January 5, 2014, Mr. Faulkner requested that the Washington Attorney General's Office provide him with a copy of the *Francis* opinion. He states that the published opinion was not yet in SCCC's database or reporters. Dkt. 6, Attachment 2. When a copy of the *Francis* opinion addressed and mailed to Mr. Faulkner was received in the SCCC mailroom, Sgt. Cheryl Sullivan rejected the mail because it contained information pertaining to another inmate. Dkt. 6, p. 4; Dkt. 14, Exhibit 1 (Mail Rejection Notice Number 46321, dated January 29, 2014)[1].

Mr. Faulkner appealed the initial mail rejection. He maintained that the opinion contained no offender information and was a civil matter containing legal information he needed to continue his research. Dkt. 6, p. 4; Dkt. 14, Exhibit 2 (Letter from Captain May, dated

---

[1] Under the incorporation by reference doctrine, a court may consider documents outside of the complaint if the document's contents are incorporated by reference in the complaint and the document's authenticity is not in question. *Dunn v. Castro*, 621 F.3d 1196, 1205 (9th Cir. 2010). Mr. Faulkner incorporates Mail Rejection Number 46321 by reference in his complaint and exhibits. Dkt. 6, at 4.

REPORT AND RECOMMENDATION - 3

February 4, 2014).[2]  The mail rejection was upheld at the facility. Dkt. 14, Exhibit 2. Mr. Faulkner was informed the mail was rejected because it contained information about another inmate currently incarcerated in a DOC facility. He was also informed he could obtain the requested information in the facility's law library. *Id.*

Mr. Faulkner appealed the facility's decision to Defendant Roy Gonzalez. Dkt. 6, at 4. Mr. Gonzalez upheld the mail rejection and explained that a document, including court opinions, containing a third party inmate's information is not allowed in Mr. Faulkner's possession because it can lead to "paper checking" a form of blackmail or coercion. Dkt. 14, Exhibit 3 (Letter from Roy Gonzalez, dated March 21, 2014).[3]  Mr. Gonzalez also informed Mr. Faulkner that his rejected "legal opinion was available for review in the facility law library and that he would be allowed to use the opinion when he was ready to mail out his complaint, habeas, PRP, etc." *Id.* However, Mr. Faulkner was not allowed to possess a copy. Mr. Gonzalez explained that some DOC law libraries were allowing inmates to possess or receive case law through the mail but that this practice is against DOC policy and had been stopped. *Id.*, Exhibit 3. Mr. Faulkner disputes that at the time of the mail rejection on January 2, 2014, that the *Francis* opinion was available in the Westlaw database at the SCCC law library. Dkt. 18, p. 3.

Mr. Faulkner contested Mr. Gonzalez's decision to uphold the mail rejection. Dkt. 6, at 4. Mr. Gonzalez responded explaining his decision to uphold the mail rejection was final. *Id.*, at 8. He also informed Mr. Faulkner that all facilities will not allow inmates to obtain case law through facility mailrooms or be allowed to have case law of other inmates in their cell. *Id.*

---

[2] *See supra* note 1, Mr. Faulkner incorporates by reference his appeal and the facility's response in his Complaint. Dkt. 6, at 4. Exhibit 2 is the facility's response upholding Mail Rejection Number 46321.

[3] *See supra* note 1, Mr. Faulkner incorporates by reference his appeal and Mr. Gonzalez's response. Dkt. 6, at 4. Exhibit 3 is Mr. Gonzalez's response upholding Mail Rejection Number 46321.

REPORT AND RECOMMENDATION - 4

Mr. Faulkner contends that DOC's policy restricting an inmate's ability to possess published opinions "deserves review under the U.S. Constitutional and Washington State Constitutional rights to access to the courts and a prisoner's right to access and obtain legal materials." Dkt. 6, p. 4. In his response to Defendants' motion to dismiss, Mr. Faulkner contends that it is DOC's overly restrictive interpretation of the policy that inmates cannot possess case law "most certainly results in a viable access to courts claim" and he requests additional time to research such a claim. He also contends that the rejection of his mail presented no penological threat as claimed by defendants. He seeks an order directing the DOC to rescind this ban on prisoners obtaining case law and compensatory damages in the amount of $25,000.00 for denying him access to a published opinion. *Id.*, p. 5.

**STANDARD OF REVIEW**

A court may grant a motion for dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6), "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Keniston v. Roberts*, 717 F.2d 1295, 1300 (9th Cir. 1983) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 [1957]). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).

On a motion to dismiss, material allegations of the complaint are taken as admitted and the complaint is to be liberally construed in favor of the plaintiff. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969), *reh'g denied*, 396 U.S. 869 (1969); *Sherman v. Yakahi*, 549 F.2d 1287, 1290 (9th Cir. 1977). Where a plaintiff is proceeding *pro se*, his allegations must be viewed under a less stringent standard than allegations of plaintiffs represented by counsel. *Haines v. Kerner*, 404 U.S. 519, 520 (1972), *reh'g denied*, 405 U.S. 948 (1972). While the court can

REPORT AND RECOMMENDATION - 5

liberally construe a plaintiff's complaint, it cannot supply an essential fact an inmate has failed to plead. *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992) (quoting *Ivey v. Board of Regents of University of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982)). Conclusory allegations unsupported by facts are insufficient to state a claim under 42 U.S.C. § 1983. *Mitchell v. King*, 537 F.2d 385, 386 (10th Cir. 1976); *Jones v. Community Redevelopment Agency*, 733 F.2d 646, 649 (9th Cir. 1984).

**DISCUSSION**

To state a claim under 42 U.S.C. §1983, at least two elements must be met: (1) the defendant must be a person acting under color of state law, (2) and his conduct must have deprived the plaintiff of rights, privileges or immunities secured by the constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527 (1981). Implicit in the second element is a third element of causation. *See Mt. Healthy City School Dist Bd. of Educ. v. Doyle*, 429 U.S. 274, 286-87 (1977); *Flores v. Pierce*, 617 F.2d 1386, 1390-91 (9th Cir. 1980), *cert. denied*, 449 U.S. 875 (1980).

**A.     First Amendment – Access to Courts**

Mr. Faulkner contends that Defendants' conduct has violated his right to access the courts. Prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Lewis v. Casey*, 518 U.S. 343, 346 (1996). To prevail on a right to access claim, a plaintiff must provide sufficient information establishing a "nonfrivolous" or "arguable" underlying claim. *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). He must show he suffered an actual injury due to the defendants' unconstitutional conduct. *Lewis*, 518 U.S. at 349. Actual injury is a jurisdictional requirement that flows from the standing doctrine and may not be

REPORT AND RECOMMENDATION - 6

waived. *Id*. Actual injury requires "actual prejudice with respect to contemplated or existing litigation." *Nevada Dep't of Corr. v. Greene*, 648 F.3d 1014, 1018 (9th Cir. 2011).

The injury requirement is not satisfied by just any type of frustrated claim. *Lewis,* 518 U.S. at 354. The right to access to courts is limited and it does not "guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims." *Lewis*, 518 U.S. at 355. The right is constrained to actions challenging their sentences directly or collaterally and to civil rights actions challenging their conditions of confinement. *Id*. "Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id*.

Mr. Faulkner has not stated a viable access to courts claim and there is no basis to grant his request for additional time to develop this claim. The underlying case in which he claims he was being denied access was a public records case in which he sought sanctions against the DOC for violating Washington's Public Records Act. He did not challenge his criminal sentence or the conditions of his confinement. A public records act case is not the type of case identified in *Lewis* as being sufficiently serious to invoke a constitutional right to access the courts.

Moreover, even if the Court considers a public records case sufficient to trigger constitutional access to courts concerns, Mr. Faulkner does not allege or identify any injury suffered due to an inability to litigate a "nonfrivolous" or "arguable" claim. Dkt. 6, at 4. Mr. Faulkner does not contend that he was unable to file pleadings in or to litigate his public records case. Dkt. 6, at 4. Rather, he argues that by the time he could obtain a copy of the published opinion, "his court deadline had passed." However, he does not describe the nature or time of

REPORT AND RECOMMENDATION - 7

the deadline, and provides no explanation of why he could not have sought an extension of the deadline or how in fact missing the deadline caused him harm.

Mr. Faulkner's public records case was published and the Court analyzed the *Francis* case in-depth.  See *Faulkner v. Washington Dep't of Corr.*, 183 Wash. App. 93, 102, 332 P.3d 1136 (2014), *review denied*, 182 Wash. 2d 1004, 342 P.3d 327 (2015) (addressing the "bad faith" analysis found in *Francis v. Dep't of Corr.*, 178 Wash. App. 42, 313 P.3d 457 (2013)).

Even assuming all material allegations of Mr. Faulkner' complaint as admitted and liberally construing those allegations in his favor, Mr. Faulkner can prove no set of facts in support of his claim that the rejection of his mail violated his right to access the courts.  A public records act case is not a cause of action protected under *Lewis* and Mr. Faulkner has shown no prejudice.  His access to courts claim should be dismissed with prejudice.

**B.     First Amendment Free Speech**

Mr. Faulkner also contends that the mail rejection restricted his constitutional right to receive a publication through the mail. He argues that the DOC's policy is overly restrictive and that its stated penological interest of preventing inmates from possessing another inmate's information, including case law, is unconstitutional.  Dkt. 18, at 6-7.  He also contends that the DOC has no penological interest in the facility mail room's rejection of case law because it failed to provide an individualized risk assessment showing the case law in his possession presented a specific safety and security problem. *Id.*, at 7.

Incoming mail restrictions are appropriate if considered reasonable after conducting a *Turner* analysis. *Thornburgh v. Abbott*, 490 U.S. 401, 413-14 (1989). *Turner* sets out a four-part test which governs prison policies and regulations concerning incoming mail: (1) whether there is a "'valid, rational connection' between the prison regulation and the legitimate

REPORT AND RECOMMENDATION - 8

governmental interest put forward to justify it"; (2) whether there are "alternative means of exercising the rights that remain open to prison inmates"; (3) what "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and, (4) whether the "absence of ready alternatives is evidence of the reasonableness of a prison regulation." *Turner*, 482 U.S. at 89-90.  As to the first element of the test, it is important to inquire whether the restriction operates in a "neutral fashion, without regard to the content of the expression."  *Id*. at 90.

The first *Turner* factor requires only a rational relationship between the governmental objective and the regulation or action.  *Turner*, 482 U.S. at 89-91; *Ashker v. California Dep't of Corr.*, 350 F.3d 917, 922 (9th Cir. 2003).  "Ordinarily, 'even in the absence of institution-specific or general social science evidence, as long as it is plausible that prison officials believed the policy would further a legitimate objective, the governmental defendant should prevail on *Turner's* first prong.'"  *California First Amendment Coal. v. Woodford*, 299 F.3d 868, 881 (9th Cir. 2002) (*quoting Frost v. Symington*, 197 F.3d 348, 355 (9th Cir.1999)).  A dismissal on the pleadings is possible if a "common-sense connection" exists between a legitimate penological objective and the challenged regulation or action.  *Whitmire v. Arizona*, 298 F.3d 1134, 1136 (9th Cir. 2002).

The record reflects that there is a rational relationship between DOC's stated policy reason for rejecting Mr. Faulkner's mail.  In Mr. Faulkner's February 4, 2014 Mail Rejection Appeal, it is stated that DOC Policy Directive 450.100 Mail for Offenders prohibits "mail containing information, which if communicated, could create a risk of violence and/or physical harm to any person."  Dkt. 14-1, at 4.  Mr. Faulkner's rejected mail related to "another Offender that is currently incarcerated in Washington State DOC facility.  Any information that you

REPORT AND RECOMMENDATION - 9

require for your legal work can be requested through the Law Library." *Id.* According to the explanation provided to Mr. Faulkner in his mail rejection appeal, the policy is content neutral because it rejects all documents related to other offenders and the policy provides clear, easy, and efficient direction to mail staff. *Id.* These are reasonable and rational penological interests for the policy.

As to the second *Turner* factor, Mr. Faulkner has other means of accessing case law in prison. Specifically, he can access the law library and request help from a law librarian should he have problems finding a specific case. Mr. Faulkner focuses on arguing the law library computers did not have the case he desired. However, he never alleges he engaged the law librarian and the law librarian was unable or unwilling to provide him access to the case law.

The third and fourth *Turner* factors are also met. The policy has a direct impact on inmates and staff as it is meant to protect inmates from other inmates who may attempt to use outside information against them in prison. Mr. Faulkner offers no easy alternatives, other than removing the restriction.

Even assuming all material allegations of Mr. Faulkner' complaint as admitted and liberally construing those allegations in favor of Mr. Faulkner, Mr. Faulkner can prove no set of facts in support of his claim that the mail restriction preventing him from receiving and possessing documents containing information on another inmate is unconstitutional.

**C.    Personal Participation**

Mr. Faulkner claims that he was denied access to the courts. He fails, however, to show that Defendants Davis, Sullivan, and Gonzalez participated in an access to courts violation.

A plaintiff must prove a defendant caused or personally participated in causing the deprivation of a particular protected constitutional right. *Arnold v. Int'l Business Machines,* 637

REPORT AND RECOMMENDATION - 10

F.2d 1350, 1355 (9th Cir. 1981); *Sherman v. Yakahi,* 549 F.2d 1287, 1290 (1977).  To be liable for "causing" the deprivation of a constitutional right, the particular defendant must commit an affirmative act, or omit to perform an act that she is legally required to do, which causes the plaintiff's deprivation.  *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

Defendants in a 42 U.S.C. § 1983 action cannot be held liable based on a theory of respondeat superior or vicarious liability. *Starr v. Baca*, 652 F.3d 1202, 1206-07 (9th Cir. 2011); *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).  They also cannot be held liable under 42 U.S.C. § 1983 solely on the basis of supervisory responsibility or position.  *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Absent some personal involvement by the defendants in the allegedly unlawful conduct of subordinates, they cannot be held liable under § 1983.  *Johnson*, 588 F.2d at 743-44.

Mr. Faulkner alleges that Mr. Davis denied his appeal at the facility.  Dkt. 6, at 4.  However, the appeal letter received by Mr. Faulkner clearly indicates that Captain C. May denied his appeal.  Dkt. 14, Exhibit 2.  Mr. Faulkner concedes that he mistakenly named Mr. Davis instead of Captain May in his complaint and seeks leave to amend his complaint to name Captain May.  Dkt. 18, p. 5.  Because the complaint contains no allegations against Mr. Davis, all claims against Mr. Davis should be dismissed. Mr. Faulkner's request to amend should be denied because, as noted above, Mr. Faulkner can prove no set of facts in support of his claim that the rejection of his mail violated his constitutional rights.  Moreover, to the extent Mr. Faulkner seeks to include Captain May merely because Captain May denied his appeal, this does not constitute active unconstitutional behavior.

Mr. Faulkner also names Sergeant Sullivan and Mr. Gonzalez because of their involvement with Mail Rejection Number 46321.  Dkt. 6, at 4.  Sergeant Sullivan was one of two

REPORT AND RECOMMENDATION - 11

correctional officers whose signature appears on the mail rejection and Mr. Gonzalez solely responded to Mr. Faulkner's second-level appeal.  Dkt. 14, Exhibit 1; Exhibit 3; Dkt. 6, at 8.  Neither defendant is alleged to have committed acts preventing Mr. Faulkner from accessing information in the law library or preventing him from filing a non-frivolous claim.  Dkt. 6, at 4.  Therefore, Mr. Faulkner's complaint is not sufficient to allege the personal participation of Sergeant Sullivan or Mr. Gonzalez and these Defendants are entitled to dismissal of the claims against them.

**D.     Washington Department of Corrections**

Mr. Faulkner includes the DOC as a defendant in his civil rights claim.  Section 1983 creates a cause of action for a plaintiff whose constitutional rights have been violated by any "person" acting under color of law.  42 U.S.C. § 1983.  However, for the purposes of § 1983, a state is not a "person." *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 69 (1997); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  Similarly, an agency that is an arm of the state is also not a "person" under § 1983. *See Howlett v. Rose*, 496 U.S. 356, 365 (1990); *also Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (per curiam) (suit against the state Board of Corrections was barred by the Eleventh Amendment).

Mr. Faulkner seeks both monetary damages and injunctive relief.  Dkt. 6, at 5.  However, the Eleventh Amendment also prevents injunctive relief against the state itself. *Will*, 491 U.S. at 78 n. 10.  Therefore, a plaintiff must name a person in his or her official capacity in order to obtain injunctive relief. *Quern v. Jordan*, 440 U.S. 332 (1979).

Therefore, Mr. Faulkner's claims against the DOC should be dismissed.

REPORT AND RECOMMENDATION - 12

**E.     Qualified Immunity**

Defendants also argue that they are entitled to qualified immunity because their conduct did not clearly violate Mr. Faulkner's constitutional rights.  Qualified immunity protects government officials from liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  In determining whether defendants are entitled to qualified immunity, the court makes a two-step inquiry.  First, the court must determine if plaintiff has alleged sufficient facts to show that defendants violated his constitutional rights. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  Second, the court must determine if the right was clearly established. *Id*.  This requires the court to determine if it would have been clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Id*. at 202.  Plaintiff bears the burden of proving that the right was clearly established. *See Davis v. Scherer*, 468 U.S. 183, 197 (1984).  Courts can address these issues in any order. *Pearson,* 555 U.S. 223 (2009).

As discussed above, Mr. Faulkner has failed to state a violation of a clearly established constitutional right and therefore the issue of qualified immunity is not addressed.

**F.     Washington Constitutional Claim**

Mr. Faulkner also contends that Defendants' conduct violated Washington's constitution. Because Mr. Faulkner has failed to state any federal claims, the Court should decline to exercise pendent jurisdiction over any state law claims.  See United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) (federal courts should refrain from exercising pendent jurisdiction when federal claims are dismissed before trial).  Accordingly, Mr. Faulkner's state law claim should be dismissed without prejudice.

REPORT AND RECOMMENDATION - 13

## CONCLUSION

The undersigned recommends that Defendants' motion to dismiss (Dkt. 14) be **Granted** and Plaintiff's § 1983 claims against Defendants **dismissed with prejudice.** The Court should also decline to exercise jurisdiction over Plaintiff's state law claim and **dismiss** the state law claim without prejudice.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections.  See also Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **July 24, 2015**, as noted in the caption.

**DATED** this  6th day of July, 2015.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 14